```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION


TAISHENG INTERNATIONAL LTD.,    §
                                §
           Plaintiff,           §
                                §
v.                              §
                                §   CIVIL ACTION NO. H-05-1920
EAGLE MARITIME SERVICES, INC.   §           (Admiralty)
d/b/a EGL OCEAN LINE and        §
EGL, INC. f/k/a EAGLE GLOBAL    §
LOGISTICS, INC.,                §
                                §
           Defendants.          §
```

**MEMORANDUM OPINION AND ORDER**

Third-Party Plaintiffs Eagle Maritime Services, Inc. and EGL, Inc. (collectively "EGL") filed this Third-Party Complaint against Euro Classics, Inc. ("Euro"), alleging damages in connection with a maritime cargo case.[1] Pending before the court are Third-Party Defendant Euro's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Docket Entry No. 32), EGL's Response to Euro's Motion to Dismiss (Docket Entry No. 33), Euro's Objection and Reply to Third-Party Plaintiff's Response (Docket Entry No. 34), Euro's Request for Oral Hearing (Docket Entry No. 35), and EGL's Surreply and Supplemental Response to Euro's Motion to Dismiss (Docket Entry No. 36).

---

[1] EGL's Third-Party Complaint, Docket Entry No. 15.

For the reasons explained below, the court will deny Euro's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue.

## I.  Factual and Procedural Background

Plaintiff, Taisheng International Ltd.'s ("Taisheng"), First Amended Complaint contains the following allegations: On September 29, 2004, Taisheng shipped fourteen containers of bath sets and giftware from Hong Kong, China, to Seattle, Washington, aboard various EGL vessels.[2] The containers were shipped under EGL bills of lading that required surrender of at least one of the three original bills of lading in order for the consignee to take custody of the cargo.[3]

Prior to the shipment, Taisheng and EGL had reached an agreement that EGL was not to release any containers to the consignee, Euro, without a telexed release from Taisheng because Euro had not yet paid for the goods. Taisheng retained possession of the original bills of lading issued by EGL. Despite this agreement, EGL released the containers without a telex from

---

[2]Plaintiff's First Amended Complaint, Docket Entry No. 22. Taisheng is a foreign corporation with its principal offices in Hong Kong, China; and EGL is a corporation whose principal place of business is in Houston, Texas. Id. Euro is a corporation whose principal office is located in Union, New Jersey. EGL's Third-Party Complaint, Docket Entry No. 15, § I ¶ 1.

[3]A consignee is the entity designated to receive the goods from the carrier.

Taisheng and without the original bills of lading, which Taisheng still retains. When Taisheng asked EGL about the status of the containers, EGL said that they retained the containers, despite having released them to Euro months earlier. EGL asked Taisheng to expedite the issuance of telexed releases on certain containers that had been released months earlier. When a representative of Taisheng arrived at EGL's offices to verify the status of the containers in April of 2005, EGL informed Taisheng that it had released the cargo. Taisheng was not paid for six of the fourteen containers, and filed suit against EGL in federal court.

EGL filed a Third-Party Complaint against Euro. EGL's Third-Party Complaint alleges that Euro is liable to Taisheng for the value of the cargo at issue.[4] EGL released certain of its cargo to the custody of Euro based on Euro's agreement to "indemnify and hold [EGL] harmless with respect to any claims, damages, costs and expenses of any nature whatsoever and to reimburse [EGL] for cargo value and any additional claim, damages, costs and expenses in connection therewith."[5] Euro, now insolvent, failed to do so.[6] Among its other claims EGL alleges that Euro owes it unpaid shipping charges for cargo at issue.[7]

---

[4] EGL's Third-Party Complaint, Docket Entry No. 15, § IV ¶ 1.

[5] Id. at § IV ¶ 2.

[6] Plaintiff's First Amended Complaint, Docket Entry No. 22, § III ¶ 3; EGL's Third-Party Complaint, Docket Entry No. 15, § IV.

[7] EGL's Third-Party Complaint, Docket Entry No. 15, § IV ¶ 3.

## II. Standard of Review

When a motion to dismiss for lack of jurisdiction is decided without an evidentiary hearing, the party seeking to assert jurisdiction is only required to establish sufficient facts to make out a prima facie case supporting jurisdiction. Central Freight Lines Inc. v. APA Transport Corp., 322 F.3d 376, 380 (5th Cir. 2003). A district court may consider affidavits and other properly obtained evidence when making its determination. Quick Technologies, Inc. v. Sage Group PLC, 313 F.3d 338, 344 (5th Cir. 2002). The court must accept the uncontroverted allegations of the party asserting jurisdiction as true and resolve all factual conflicts in favor of that party. Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution permits the exercise of personal jurisdiction over a nonresident defendant when

> (1) the defendant has had "minimum contacts" with the forum state, and
>
> (2) the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice."

See International Shoe Co. v. Washington, 66 S.Ct. 154, 158 (1945).

The personal jurisdiction requirement is a right that can be waived by means of an enforceable forum selection clause in which the parties consent to personal jurisdiction in a given forum.[8]

---

[8]The Fifth Circuit has not determined whether motions to dismiss on the basis of forum selection clauses are properly
(continued...)

Burger King Corp. v. Rudzewicz, 105 S.Ct. 2174, 2182 n.14 (1985). Federal law governs the enforceability of forum selection and choice of law clauses. Haynsworth v. The Corporation, 121 F.3d 956, 962 (5th Cir. 1997). Federal law considers forum selection clauses to be presumptively valid. M/S Bremen v. Zapata Off-Shore Co., 92 S.Ct. 1907, 1916 (1972). See also Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 115 S.Ct. 2322, 2328-29 (1995). A party seeking to avoid enforcement of a forum selection clause must establish that the clause is unreasonable under the circumstances. Bremen, 92 S.Ct. at 1916. "The burden of proving unreasonableness is a heavy one, carried only by a showing that the clause results from fraud or overreaching, that it violates a strong public policy, or that enforcement of the clause deprives the plaintiff of his day in court." Mitsui & Co (USA), Inc. v. MIRA M/V, 111 F.3d 33, 35 (5th Cir. 1997).

### III. Analysis

**A. The Bill of Lading**

Euro argues that it does not have sufficient minimum contacts with Texas to satisfy the due process clause of the Constitution.

---

⁸(...continued)
brought under both Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3). See Lim v. Offshore Specialty Fabricators, Inc., 404 F.3d 898, 902 (5th Cir. 2005). The court in Lim approved dismissals under Rule 12(b)(3) without ruling on the appropriateness of Rule 12(b)(1) motions. Id. This court need not be concerned with the proper procedural posture of motions to dismiss on the basis of a forum selection clause because the forum selection clause was asserted as a defense to the Motion to Dismiss, not offensively.

EGL responds by arguing that Euro has consented to personal jurisdiction in the Southern District of Texas via the forum selection clause contained in the bills of lading.[9]  Euro counters by arguing that it should not be subject to the forum selection clause of the bill of lading because the bill of lading is a contract of adhesion not applicable to Euro as the consignee.[10]

The bill of lading contains the following clause, labeled "Jurisdiction":  "Any claim or dispute arising under this Bill of Lading shall exclusively be governed by U.S. law and determined by the United States District Court for the Southern District of Texas Houston Division."[11]  The clause clearly contemplates that the Southern District of Texas, Houston Division, serve as the forum for lawsuits.  Neither party disputes this.  Because the bill of lading has a forum selection clause, the court must first determine whether the bill of lading binds Euro and then determine if the forum selection clause is enforceable.

---

[9] Although the court was only presented with Bill of Lading Number 70268403, neither party has represented to the court that the other bills of lading contain any disparate relevant provisions or clauses.  The court will refer to the bill of lading individually in its opinion, but such reference also encompasses bills of lading numbers 70268403, 70308028, 70380399, 70341232, 70334522, 70294827.

[10] Euro also argues that the bill of lading is hearsay because EGL failed to prove-up the document.  Any merit this objection might have had is moot because EGL submitted an authenticating affidavit for the bill of lading in its Surreply.  EGL's Surreply and Supplemental Response, Docket Entry No. 36, Exhibit A.

[11] Bill of Lading Number 70268403, ¶ 19, contained in EGL's Response, Docket Entry No. 33, Exhibit A.

A bill of lading can serve multiple functions.  "A bill of lading is, in the first instance and most simply, an acknowledgment by a carrier that it has received goods for shipment.  Secondly, the bill is a contract of carriage.  Thirdly, if the bill is negotiated . . . it controls possession of the goods and is one of the indispensable documents in financing the movements of commodities and merchandise throughout the world."  <u>Cargill Ferrous Intern. v. Sea Phoeniz MV</u>, 325 F.3d 695, 702 (5th Cir. 2003) (quoting Grant Gilmore & Charles L. Black, The Law of Admiralty, 93 (2d ed. 1975)).  In this case, the issue is whether the Bill of Lading binds the consignee as a contract of carriage.

The front of the bill of lading names Euro as consignee.  In addition, the bill of lading contains multiple provisions regarding merchants.  It defines "Merchant" to include "the Shipper, the Receiver, the Consignor, the Consignee, the Holder of this Bill of Lading and any other person acting on behalf of any of the above-mentioned persons."[12]  The bill of lading, on its face, was clearly designed to apply to Euro as the consignee.  Although the bill of lading is not signed by Euro, this is not unusual.  Typically, a bill of lading is only signed by the carrier or his agent.  1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 10-11, at 44 (4th ed. 2005).

---

[12]Bill of Lading Number 70268403, ¶ 2.3, contained in EGL's Response, Docket Entry No. 33, Exhibit A.

EGL argues that Euro is bound by the bill of lading because it is the named consignee. (Response, p. 2) Euro counters that EGL has not established any authority for binding a consignee to a bill of lading when the consignee has not sought benefits under the bill of lading. (Reply, p. 2) Euro notes that it has not sought relief from this court for cargo damage under the bill of lading. (Reply, p. 2) Euro further argues that bills of lading are contracts of adhesion between the shipper and carrier and should not bind it as consignee.[13]

Although a bill of lading is a contract between a shipper and carrier, there is ample precedent for binding a consignee to the bill of lading contract. See, e.g., Vimar, 115 S.Ct. 2322; Mitsui, 111 F.3d 33; All Pacific Trading, Inc. v. Vessel V/V Hanjin Yosu, 7 F.3d 1427 (9th Cir. 1993); F.D. Import & Export Corp. v. M/V

---

[13]Euro cites Interocean Steamship Corp. v. New Orleans Cold Storage and Warehouse Co., 865 F.2d 699, 703 (5th Cir. 1989), for this proposition. In Interocean the carrier's agent on its own behalf and as subrogee for the carrier and shipper sued the customhouse broker that it hired to perform various functions, including clearing the cargo through customs. Interocean Steamship Corp., 865 F.2d at 701. The Fifth Circuit concluded that the customhouse broker was not a party to the bill of lading. Id. at 703. After noting that the bill of lading is a contract of adhesion strictly construed against the carrier, the court held that the contractual relationship the customhouse broker had with the shipper did not transform it to a party to the contract because it "had not signed the bill[s] of lading[, but] was merely performing the function of caring for the cargo until delivery–a contractual duty owed to the shipper in the first instance by [the carrier] who is responsible for its agent's acts." Id. (internal citations omitted). Interocean does not control this case. Euro is not a customhouse broker but rather the consignee, named as such on the bill of lading.

Reefer Sun, 248 F.Supp.2d 240 (S.D.N.Y. 2002); Metallia U.S.A. v. Buyalyk, 1999 WL 717642 (E.D. La. 1999). Kanematsu Corp. v. M/V Gretchen W, 897 F.Supp. 1314 (D. Or. 1995).

Courts have bound non-signatory consignees to bills of lading under the acceptance theory. By filing a lawsuit under a bill of lading, the consignee accepts its terms, including an arbitration or choice of law clause. Steel Warehouse Co., Inc. v. Abalone Shipping Ltd., 141 F.3d 234 (5th Cir. 1998); Mitsui, 111 F.3d at 36. In Mitsui the consignee sued the carrier under a bill of lading that Mitsui, the consignee, did not negotiate and that it did not receive until after the cargo was loaded. Id. at 34. The bill of lading contained a forum selection clause stating that all disputes were to be adjudicated in London, England, and a choice of law clause stating that the Carriage of Goods by Sea Act ("COGSA") would control.[14] Id. at 34-35. The court held that "by filing a lawsuit for damages under the bill of lading, Mitsui has accepted the terms of the bill of lading, including the unnegotiated forum selection clause." Id. at 36. The Fifth Circuit reiterated this rule in Steel Warehouse stating that in Mitsui it had "rejected the argument that a bill of lading was a contract of adhesion, and held that the plaintiff in that suit accepted the properly incorporated

---

[14]COGSA is applicable to this case. COGSA, 46 U.S.C. App. § 1312 ("This Act shall apply to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade."); Bill of Lading Number 70268403, ¶ 1 (Clause Paramount), contained in EGL's Response, Docket Entry No. 33, Exhibit A. The parties have not argued that the provisions of COGSA affect the issues related to the Motion to Dismiss.

terms of the bill of lading when it filed suit under the bill of lading." Steel Warehouse, 141 F.3d at 237.

As Euro points out, it has not sued EGL under the bill of lading *in this case*. But Euro notes in its pleadings that it has sued EGL in the Superior Court of New Jersey.[15] It is not clear from the pleadings in the New Jersey case whether the same shipment of goods forms the basis for both lawsuits.[16] The pleadings of the parties in this case, however, do establish that the goods shipped from Hong Kong are the goods involved in both lawsuits. According to Euro, "EGL's claims are the subject of a previously filed lawsuit that is presently proceeding in New Jersey." (Motion to Dismiss, ¶ 18)  EGL disagrees with this assessment, stating that "the New Jersey lawsuit involves issues arising from warehousing capacity and the handling and inland transportation of cargo. The freight charges at issue in the third-party claim arose before the cargo reached the warehouse and do not involve inland distribution." (Response, p. 3)  EGL's disagreement does not involve whether the same goods are the subject of both lawsuits, but whether the same legal claims and transactions form the basis

---

[15] Euro noted the lawsuit in its Motion to Dismiss, but failed to attach it. Motion to Dismiss, p. 7. EGL attached the complaint as an Exhibit to its Response, along with EGL's Answer and Counterclaim, and Euro's Answer to EGL's Counterclaim. EGL's Response, Docket Entry No. 33, Exhibit B.

[16] EGL's Response, Docket Entry No. 33, Exhibit B.

of both lawsuits.[17]  The pleadings of both parties in this case indicate that the same goods are at issue in this lawsuit and the New Jersey lawsuit.

This analysis is relevant because if Euro sued EGL in New Jersey under a bill of lading at issue in this case, EGL may be deemed to have accepted the terms of the bill of lading, including the forum selection clause.  While <u>Mitsui</u> and <u>Steel Warehouse</u> do not directly address the issue of whether a consignee has accepted the terms of a bill of lading by filing suit in another court, acceptance of a bill of lading can take many forms.  See <u>All Pacific Trading</u>, 7 F.3d at 1432.  The filing of a lawsuit under the bill of lading is one form of acceptance explicitly recognized by the Fifth Circuit.  <u>Mitsui</u>, 111 F.3d at 36.  Despite this and despite the fact that the New Jersey lawsuit involves the same goods as this case, there is no indication that the New Jersey lawsuit involves the bill of lading at issue in this case.  The New Jersey complaint states that the bills of lading referenced in that suit are for inland transportation of the goods, not shipping.

---

[17]The court's reading of the New Jersey complaint generally supports EGL's characterization.  EGL concedes that to the extent the New Jersey lawsuit was filed first, its Third-Party Complaint should be dismissed.  It appears that section IV, paragraph 4 of EGL's Third-Party Complaint concerns the subject matter of the New Jersey lawsuit.  Because the facts are not well-developed at this point in the litigation and neither party has definitively established that section IV, paragraph 4 concerns the subject matter of the New Jersey lawsuit, the court will not rule on whether this portion of EGL's Third-Party Complaint should be dismissed at this time.

In addition, there is no evidence that Euro was ever given the bill of lading. Taisheng's First Amended Complaint states that "Taisheng continues to hold the original bills of lading[.]" (First Amended Complaint, § III ¶ 3) Without evidence that Euro sought benefits under the bill of lading or ever accepted the Bill of Lading, EGL cannot bind Euro to the bill of lading under the theory of acceptance.

A consignee to a bill of lading may also be bound to the bill of lading under agency principles. Federal maritime law embraces the principles of agency. West India Industries, Inc. v. Vance & Sons AMC-Jeep, 671 F.2d 1384, 1387 (5th Cir. 1982). The general rule is that where a consignee purchases merchandise from a seller and authorizes the seller to ship the goods, the seller as shipper or consignor is the consignee's agent for the purpose of the shipping. 1-2, Saul Sorkin, Goods in Transit § 2.01[8] (2005). The shipper or consignor is impliedly authorized to enter into the usual and customary transportation contract with the carrier, and the consignee is bound by such terms. See United States v. M/V Santa Clara I, 887 F.Supp. 825, 836 (D.S.C. 1995) ("Contracts or bills of lading on which a party is named as consignee bind that party to the agreement"). See also Jockey Int'l v. M/V "Leverkusen Express", 217 F.Supp.2d 447 at 456-57 (S.D.N.Y. 2002) (holding that a consignee is bound by a forum selection clause in the bill of lading when the bill of lading was issued to an intermediary who acted as the consignee's agent in arranging the shipment).

To bind a nonsignatory consignee to the bill of lading, there must be an agency relationship between the consignee and the shipper. See Nebraska Wine & Spirits, Inc. v. Burlington N.R. Co., 1992 WL 328938 (W.D. Mo. 1992). An agency relationship can be established based on actual authority, apparent authority, or estoppel. Wells Fargo Business Credit v. Ben Kozloff, Inc., 695 F.2d 940, 944-46 (5th Cir. 1982).

For purposes of the pending motion the court accepts as true EGL's uncontroverted allegations and resolves any factual conflicts in favor of EGL as the party seeking to invoke the court's jurisdiction. Central Freight, 322 F.3d at 380. EGL has asserted that Taisheng sold the cargo forming the basis of this lawsuit to Euro with the Bill of Lading naming Euro as consignee. (Third-Party Complaint, § IV ¶ 1) Euro, having authorized the transaction to buy the goods from Taisheng, implicitly authorized Taisheng to arrange for the transportation of the goods to the port in Seattle. The evidence at this point, while incomplete, is sufficient to establish a prima facie case that Taisheng acted as Euro's agent, binding Euro to the bill of lading.

Furthermore, while the evidence is not sufficient to establish actual notice, Euro nonetheless had constructive notice of the terms of the bill of lading.[18] The New Jersey lawsuit establishes

---

[18]Euro may well have had actual notice of the terms of the bill of lading, especially given that Euro does not argue lack of notice
(continued...)

that the relationship between EGL and Euro was not limited to the subject of this lawsuit.  At the very least, Euro contracted with EGL to act as freight forwarder for the Hong Kong goods.  EGL's responsibilities as freight forwarder included transportation, uploading, palletizing for storage, order picking, labeling, re-palletizing, issuing bills of lading and packing lists, and then making items available for shipment to Euro's customers.[19]  Although the facts in this case are not yet well-developed, it is clear that the subject of this lawsuit was not an isolated transaction between EGL and Euro, raising the possibility that Euro was aware of the forum selection clause that EGL places in its bills of lading. Moreover, Euro, as a sophisticated party, should have known that once it arranged to purchase goods shipped from Hong Kong a binding bill of lading, including a forum selection clause, would have been issued by the carrier.  See Steel Warehouse, 141 F.3d at 237.

**B.    The Forum Selection Clause**

The forum selection clause contained in the bill of lading is presumptively valid.  Euro has the burden of establishing that the forum selection clause should not be enforced.  Bremen, 92 S.Ct. at 1916.  Euro could have met that burden by showing that the clause

---

[18](...continued)
in its pleadings.  The facts in this case are not sufficiently developed to determine if Euro had actual notice.

[19]New Jersey Complaint, §§ 3-4, contained in EGL's Response, Docket Entry No. 33, Exhibit B.

results from fraud or overreaching, that it violates a strong public policy, or that enforcement of the clause would deprive Euro of its day in court. Mitsui, 111 F.3d at 36. Euro's pleadings do not argue that the forum selection clause contained in the bill of lading is unenforceable, except to the extent that Euro argues that the bill of lading does not bind it. Because Euro has not shown that the clause is unreasonable and unjust or invalid, the forum selection clause is enforceable against it.

**C.   Venue**

Euro's Motion to Dismiss includes a motion to dismiss for improper venue. Although Euro does not cite a statute, the Motion to Dismiss for Improper Venue is properly brought under 28 U.S.C. § 1406. The court has already determined that the forum selection clause in the bill of lading is enforceable and binds Euro. The bill of lading provides that the Southern District of Texas, Houston Division, will determine disputes under the bill of lading. A choice of forum or forum selection provision validly contracts for venue in the chosen district. See Kevlin Services, Inc. v. Lexington State Bank, 46 F.3d 13, 15 (5th Cir. 1995). Accordingly, the Southern District of Texas is a proper venue for this suit.

**D.   Subject Matter Jurisdiction**

Finally, Euro raises the issue of the court's subject matter jurisdiction over the claim in one short paragraph of its Reply Brief. Euro argues, without any citation to authority, that EGL

has failed to come forward with an independent basis of jurisdiction. (Reply ¶ 4) Euro states that it has paid Taisheng and obtained a release.[20] Euro argues that because Taisheng no longer has a claim against Euro, EGL must come forward with an independent basis for jurisdiction. Assuming, <u>arguendo</u>, that the release by Taisheng means that Taisheng no longer has a claim against Euro, EGL can still assert its Third-Party Complaint against Euro by virtue of Euro's alleged liability to EGL. Under Federal Rule of Civil Procedure 14(c) the third-party plaintiff can bring in a third-party defendant who may be liable either to the plaintiff *or* the third-party plaintiff due to the same transaction or occurrence that forms the basis of the original admiralty action. EGL's Third-Party Complaint states that Euro is liable to EGL (1) under the indemnity agreement between the parties, (2) for unpaid shipping charges related to the cargo shipments that form the basis of this lawsuit, and (3) for unpaid shipping charges related to cargo shipments that are not the basis of this lawsuit. (Third-Party Complaint § IV) EGL has provided an adequate basis for jurisdiction under Rule 14(c) by virtue of its claims against Euro contained in its Third-Party Complaint.[21]

---

[20]Euro included a copy of the release in its pleadings. Euro's Reply, Docket Entry No. 34, Exhibit A.

[21]Because the court has determined that EGL has asserted an adequate basis for subject matter jurisdiction, it is unnecessary to consider EGL's argument that the joinder of Euro Classics is proper under Rule 19(a). EGL's Surreply, Docket Entry No. 36, ¶ 5.

The court concludes that EGL has established a prima facie case of personal jurisdiction over Euro by virtue of the choice of forum clause contained in the bill of lading.  The forum selection clause in turn establishes proper venue in this district.  Therefore the court will deny Euro's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue.

## IV.  Conclusions and Order

For the reasons explained above, the court concludes that it has personal jurisdiction over Third-Party Defendant Euro and that venue is proper in this district.  Therefore, Third-Party Defendant Euro's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Docket Entry No. 32) is **DENIED**.

**SIGNED** at Houston, Texas, on this 30th day of March, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE